**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PAMELA F. HENDRICKS,       )
                            )
           Plaintiff,      )
                            )
         v.               )      Civil Action No. 13-491
                            )
PITTSBURGH PUBLIC SCHOOLS,      )      Judge Nora Barry Fischer
Pittsburgh Faison Primary Campus,     )
                            )
          Defendant.     )
                            )

<u>MEMORANDUM OPINION</u>

**NORA BARRY FISCHER, District Judge.**

**I. Introduction**

       This is an employment discrimination action brought by Pamela Hendricks ("Plaintiff")

against her former employer, Pittsburgh Public Schools ("PPS"), Pittsburgh Faison Primary

Campus ("Defendant"). Plaintiff asserts that Defendant discriminated against her based upon her

race, subjected her to a hostile work environment, and retaliated against her in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII") and the

Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA"). Presently pending before

the Court is the Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil

Procedure 56. (Docket No. 22). Upon consideration of the parties' submissions and for the

reasons set forth below, the Defendant's Motion will be granted, in part, and denied, in part.

**II. Brief Statement of Material Facts[1]**

---

[1] Because the Court writes primarily for the parties, who are familiar with the facts, the Court will not exhaustively discuss same here. The facts herein are the undisputed material facts, as set forth in the parties' respective Concise Statements of Material Facts ("CSMF") and the Plaintiff's Reply to Defendant's CSMF. (Docket Nos. 24, 29, 33).

### A. Plaintiff's Employment at PPS

Since 2001, Plaintiff was employed by PPS as a long-term substitute and special education teacher. (Docket Nos. 24, 33 at ¶¶ 16, 17, 19). During the relevant time period at Pittsburgh Faison Primary Campus ("Faison"), Plaintiff's supervisors were Leah-Rae Bivins ("Bivins") and Jo Ann Hoover ("Hoover"). (*Id.* at ¶ 20). For the 2009-2010 school year, Bivins was the Vice Principal and Yvonna K. Smith ("Smith") was the Principal. (*Id.*). The following year, Bivins became the Principal, and Hoover was the Vice Principal. (*Id.* at ¶¶ 23–24). Dealyn Allen ("Allen"), as the special education supervisor, was also Plaintiff's supervisor. (*Id.* at ¶28).

From September through December 2009, Plaintiff's supervisors conducted observations of her in her classroom. (*Id.* at ¶ 34). Plaintiff was "written up" for not having materials available during an unannounced observation, even though her materials were nearby in her file cabinet. (*Id.* at ¶ 47). On December 16, 2009, she was placed on an Employee Improvement Plan ("EIP"). Five months later, Plaintiff received her first unsatisfactory rating. (*Id.* at ¶ 39). She filed a grievance in June 2010, and by letter dated February 4, 2011, the grievance was denied. (*Id.* at ¶¶ 43, 44).

After supervision by Bivins, Allen and Hoover during September and October of the following school year, Hoover and Bivins decided to place Plaintiff on a second EIP. (*Id.* at ¶¶ 50, 60). Following the implementation of the second EIP, Bivins, Hoover, and Allen performed informal and formal observations of Plaintiff. (*Id.* at ¶ 53). Bivins recommended that Plaintiff receive a second unsatisfactory rating to Dr. Jeannine French ("Dr. French"), who relayed the recommendation to the superintendent, Dr. Linda Lane ("Lane"). (*Id.* at ¶ 58). According to Bivins, this recommendation was based on the formal and informal observations and input from each of the observers. (*Id.* at ¶ 59). After receiving two unsatisfactory ratings, Plaintiff was

terminated on June 21, 2011, by way of being placed on "suspension without pay" and subsequently not offered another job at PPS. (Docket Nos. 1, 5 at ¶ 30).

In support of her claims, Plaintiff contends that Bivins, as Plaintiff's supervisor, made racially discriminatory comments to her, which created a hostile work environment. For example, she claims that during a walk-through on October 8, 2010, Bivins told Plaintiff that she needed "core authority" and "to look in the mirror," and that "some people aren't made for the hood."[2] (Docket Nos. 24, 33 at ¶¶ 73, 76). Plaintiff argues that other teachers heard these statements, however Defendant denies same. (*Id.* at ¶¶ 106, 108, 113). Plaintiff also avers, among other things, that Bivins degraded her in front of her peers, said that white teachers were at a disadvantage teaching in the hood, and believed that black teachers are better equipped than white teachers to teach black students. (*Id.* at ¶¶ 88, 99, 103); (Docket No. 29 at 3, 5). Plaintiff claims that she complained about these comments and the way she was treated, and that Bivins and Hoover were aware of these complaints prior to her termination. (*Id.* at ¶¶ 63, 81, 94, 95, 97, 98). Defendant denies knowledge of any of Plaintiff's complaints. (*Id.* at ¶ 62). Plaintiff believes that her second unsatisfactory review was based on Defendant's discriminatory conduct rather than her teaching abilities. Likewise, Defendant denies same. (Docket No. 29 at 3). At the time of Plaintiff's termination, Bivins and Hoover maintain that they were unaware of Plaintiff's

---

[2] Plaintiff's notes refer to an alleged statement that Bivins made about getting back to "Homewood," however Plaintiff now maintains that the reference was to the "hood." (Docket Nos. 24, 33 at ¶ 79). Plaintiff kept notes during her employment, which she provided to William Hileman ("Hileman"), who then forwarded them via email to Human Resources Director Susan Dobies-Sinicki ("Sinicki") on September 20, 2013. (*Id.* at ¶ 121). Plaintiff kept a notebook during the 2010-2011 school year, because she knew she wouldn't remember everything and that she would get an unsatisfactory from day one. (*Id.* at ¶¶ 126–127). She took notes within a few hours of what she was documenting. (*Id.* at ¶ 129). According to Hendricks, in this notebook, several entries from 2010 are mistakenly dated 2011 because she went back and added the year to the dates later. (*Id.* at ¶ 132). Plaintiff lost the notes that she had given to Hileman because of a computer virus, so she produced four pages of typed notes in an attempt to recreate the originals. (*Id.* at ¶¶ 121–125).

complaints or her allegations of discrimination. (*Id.* at ¶¶ 61, 63). Specifically, Bivins avers that she did not know of any such allegations until November 2013. (*Id.* at ¶ 62).

Further, Plaintiff claims that Faison targeted teachers who were at the top end of the pay range, and that she and another special education teacher, Thestes Harper ("Harper") were targeted because they were first-time special education teachers. (*Id.* at ¶¶ 70–71, 142). Harper, an African-American, likewise received two consecutive unsatisfactory ratings and was placed on an Employee Improvement Plan ("EIP") at the same time as Plaintiff.[3] (*Id.* at ¶¶ 36, 142). Defendant plainly disputes this contention. Defendant maintains that none of the discriminatory conduct, incidents, and statements alleged by Plaintiff occurred.

### B. *Plaintiff's Administrative Filings*

Plaintiff denies knowledge of Defendant's Equal Employment Opportunity policy and complaint procedure and did not file a complaint with Human Resources at PPS. (*Id.* at ¶¶ 13, 14). On March 31, 2011, she completed an Equal Employment Opportunity Commission ("EEOC") intake questionnaire ("questionnaire") alleging race as the basis for her claim of employment discrimination. (*Id.* at ¶¶ 1–2). On April 21, 2011, following his review of the questionnaire, her attorney submitted the signed EEOC charge ("the charge"), which alleged discrimination based on race. (*Id.* at ¶ 3–5). On October 11, 2011, Plaintiff caused a Notice of Charge of Discrimination with the EEOC to be filed, which alleged retaliation for filing the initial charge. (*Id.* at ¶ 7).

On October 26, 2011, Defendant was advised that the Pennsylvania Human Relations Commission ("PHRC") received a copy of the charge and that it waived the opportunity to investigate the complaint back to the EEOC and would take no further action on the filing.

---

[3] Harper also filed a grievance, which was denied. (*Id.* at ¶ 141).

(Docket No. 5 at ¶ 5). According to the Declaration of Assistant Director of Human Resources Susan Dobies-Sinicki ("Sinicki"), on August 13, 2013, Defendant first became aware that Plaintiff had contacted the PFT regarding her allegations of the following: that she had "been subjected to unwelcome racial harassment by the principal;" that she was "being subjected to treatment different than [her] black counterparts;" and that "the principal has made racially discriminatory comments." (Docket Nos. 24, 33 at ¶ 9); (Docket No. 25-4 at 1). On August 30, 2013, the EEOC issued a Dismissal and Notice of Rights as to the charge. (Docket Nos. 24, 33 at ¶ 15).

### III. Procedural History

On April 3, 2013, Plaintiff initiated this action by filing the Complaint alleging a claim under the PHRA and Title VII of race discrimination, hostile work environment due to race, and retaliation for voicing complaints. (Docket No. 1 at ¶ 32-33, 36). On April 16, 2014, Defendant moved for summary judgment, to which Plaintiff responded on May 30, 2014. (Docket Nos. 22, 23, 28). After granting Plaintiff's Consented Motion to File Amended Concise Statement of Material Facts on June 6, 2014, Plaintiff filed same on June 20, 2014. (Docket Nos. 32, 33). The parties did not submit any replies or sur-replies by the Court's deadlines of July 3, 2014 or July 10, 2014, and neither requested oral argument by July 17, 2014. Hence, this matter is ripe for disposition.

### IV. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Under Rule 56, a district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *In re G-I Holdings, Inc.*, 755 F.3d 195, 201 (3d Cir. 2014) (quoting *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) and citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323; *see also Budhun v. Reading Hosp. and Med. Ctr.*, — F.3d —, 2014 WL 4211116, at *4 (3d Cir. Aug. 27, 2014). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. *Id.* The moving party need not produce any evidence showing the absence of a genuine issue of material fact. *Id.* at 325. "Instead, . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. *Id.* at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.*

In considering these evidentiary materials, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations

omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. To that end, the Third Circuit has noted that "depositions are 'one of the best forms of evidence for supporting or opposing a summary-judgment motion,' and that affidavits, not being subject to cross-examination, 'are likely to be scrutinized carefully by the court to evaluate their probative value.'" *In re CitX Corp., Inc.*, 448 F.3d 672, 679 (3d Cir. 2006) (quoting 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2722, at 373, 379 (3d ed. 1998)). Even inconsistencies within a Plaintiff's deposition may "cast[] doubt on the plaintiff's story" and "are matters ultimately useful in determining the plaintiff's credibility," but they "are not proper considerations on a motion for summary judgment." *Chatman v. City of Johnstown, PA*, 131 F. App'x 18, 20 (3d Cir. 2005). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

## V. Discussion

Defendant argues that there are no genuine issues of material fact and that it is entitled to summary judgment as to Plaintiff's race discrimination, hostile work environment, and retaliation claims under Title VII and the PHRA. (Docket No. 23). Plaintiff maintains that she has presented sufficient evidence to defeat Defendant's Motion. (Docket No. 28). The Court will address the parties' arguments, in turn.

Title VII and the PHRA prohibit discrimination on the basis of race. In the absence of

direct evidence of discrimination, a claim for discrimination under Title VII is analyzed pursuant to the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under the *McDonnell Douglas* burden shifting analysis, to make a prima facie showing of race discrimination, "a plaintiff must demonstrate that: (1) he or she belongs to a protected class; (2) he or she was qualified for the position; (3) he or she was subject to an adverse employment action despite being qualified; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination." *Coleman v. Pennsylvania State Police*, 561 F. App'x 138, 146 (3d Cir. 2014) (citing *McDonnell Dougla.*, 411 U.S. at 802–03).

The question of whether a plaintiff has established her *prima facie* case is a question of law to be determined by the court. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). If the plaintiff successfully establishes a *prima facie* case, the burden then shifts to the employer to articulate some legitimate nondiscriminatory reason for the adverse employment action. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). Once the employer does so, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons proffered by the employer were merely a pretext for discrimination, and not the true motivation for the adverse employment action. *Id.* (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, (1981)); *see also Boyd v. Citizens Bank of Pennsylvania, Inc.*, 2014 WL 2154902, at *17 (W.D. Pa. May 22, 2014).

## A. Race Discrimination Disparate Treatment Claim

The Third Circuit has adopted a modified *McDonnell Douglas* standard in reverse discrimination cases. *Iadimarco v. Runyon*, 190 F.3d 151, 163 (3d Cir. 1999). To establish a *prima face* case of reverse discrimination, the plaintiff must present "sufficient evidence to allow

a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff less favorably than others because of [his] race, color, religion, sex, or national origin." *Id.* (internal quotations and citations omitted). In applying the modified *McDonnell-Douglas* burden shifting framework here, the Court finds that Plaintiff clearly has presented more than enough evidence to move this case from "one of mere speculation to one in which a reasonable factfinder could find for her on her claims." *LaCava v. Pittsburgh Public Schools*, 2014 WL 3748201, at *3 (W.D.Pa. Jul. 29, 2014). Despite Defendant's contention to the contrary, in viewing the facts in the light most favorable to Plaintiff, this Court finds that Plaintiff has "point[ed] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

### 1. Prima Facie *Case*

With respect to her *prima facie* case, Plaintiff's burden is easily met by the evidence she has presented through her own deposition testimony and sworn affidavit, which the Court must construe in the light most favorable to the Plaintiff. *In re CitX Corp., Inc.*, 448 F.3d at 679 (quoting WRIGHT, MILLER & KANE, at 373, 379); (Docket Nos. 30-2, 30-3). In this regard: (1) she is Caucasian and was treated less favorably than African Americans, because she claims that she (2) she was qualified for the position that she formerly held at Faison; (3) she was suspended without pay and not offered another job; and (4) African American teachers were not subject to the same treatment that she was. (*Id.*). Indeed, the evidence in the record demonstrates that, as a Caucasian teacher, she was subjected to conduct and statements that were solely based

9

on her race.[4] Plaintiff also has established an inference of discrimination because: she has introduced evidence that she repeatedly was subjected to racially offensive comments and conduct by her direct supervisor, Bivins; she complained about same to another supervisor, Hoover; she was subject to two unsatisfactory ratings and EIPs; she was terminated without pay; and she was not subsequently offered another job.

### 2. Legitimate Nondiscriminatory Reason

Second, Defendant has met its burden to provide a legitimate, nondiscriminatory reason for the decision to eliminate Plaintiff's position. The evidence before the Court is sufficient to demonstrate that Plaintiff was terminated as a result of her two unsatisfactory ratings, and the same is clearly a legitimate, nondiscriminatory reason for such action. *See, e.g.*, *Vogel v. Pittsburgh Public Sch. Dist.*, 2014 WL 4187151, at *26 (W.D. Pa. Aug. 21, 2014) (finding the plaintiff's unsatisfactory rating to be a result of poor performance in holding the defendant met its burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action). Accordingly, the burden shifts back to Plaintiff to demonstrate that this reason was merely a pretext for discrimination. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 425-26 (3d Cir. 2013).

### 3. Pretext

Third, the facts presented by Plaintiff are sufficient to establish pretext. *See id.* The facts of record demonstrate that Bivins, her direct supervisor, recommended that Plaintiff receive the second unsatisfactory rating to Dr. French, who relayed the recommendation to the superintendent, Dr. Lane. (Docket Nos. 24, 33 at ¶ 58). Viewing the evidence most favorable to

---

[4] The record reflects that Bivins said, among other things, that blacks keep a tight rein on their children and that "some people aren't made for the 'hood.'" (*See* Docket Nos. 24, 33 at ¶¶ 87, 96).

Plaintiff, *see Watson v. Abington Township*, 478 F.3d 144, 147 (3d. Cir. 2007), there is no evidence in the record from which the Court could conclude as a matter of law that Plaintiff's direct supervisor was not involved in the decision to give Plaintiff both unsatisfactory ratings and to ultimately terminate her. Indeed, it is more than reasonable to infer from the facts of record that Bivins, as the direct supervisor of Plaintiff and a member of the group that conducted observations of Plaintiff's classroom for two consecutive school years, must have been directly involved in grading Plaintiff's skills. *See, e.g.*, *L.T. Associates, LLC v. Sussex Cnty. Council*, 2013 WL 3998462, at *4 (D. Del. Aug. 5, 2013) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir. 1985)). Further, it is undisputed that, based on these observations, Plaintiff was placed on the EIPs and given the unsatisfactory ratings. Plaintiff also has presented evidence that she and African-American employees who engaged in the same or similar conduct were not subject to the same discipline. Further, Plaintiff has presented sufficient evidence, when viewed in the light most favorable to her, to demonstrate that her job performance was given two "unsatisfactory" ratings based on her race as opposed to her job performance. As such, Plaintiff's evidence that she was treated discriminatorily by Bivins suffices to raise an inference that Defendant's employment action was motivated by discriminatory reasons. *See* Fuentes, 32 F.3d at 761-64 ("the plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.").

### 4. Conclusion

In consideration of the material facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently supported both her prima facie case of race discrimination and her claim that the Defendant's reason for terminating her decision was pretextual. *See Burton*, 707 F.3d at 425 (citation omitted). A jury reasonably could find that she has established all of the elements of her race discrimination claim, and as such, summary judgment is inappropriate.

## B. Hostile Work Environment Claim

Defendant claims that Plaintiff has failed to meet her burden to establish the elements of a claim for hostile work environment. (Docket No. 23 at 10). Plaintiff contends that Defendant's objectively adverse racial comments and conduct are sufficient to support her hostile work environment claim. (Docket No. 28 at 5).

Title VII and PHRA[5] both provide that it is unlawful for an employer to discriminate against an individual with respect to conditions of employment because of her race. 42 U.S.C. § 2000e-2(a); 43 P.S. § 955(a). A hostile work environment is established as a basis for harassment claims charging discrimination against a protected class. *See National R.R. Passenger Co. v. Morgan*, 536 U.S. 101, 115 (2002); *Faragher v. Boca Raton*, 524 U.S. 775, 786–87 (1998); *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001). In order to establish a hostile work

---

[5] The PHRA provides that "[i]t shall be an unlawful discriminatory practice ... [f]or any employer because of the ... race ... of any individual ... to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual ... with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract." 43 P.S. § 955(a). "The Pennsylvania courts have held that hostile work environment claims are cognizable under the PHRA." *Hubbell v. World Kitchen, LLC*, 688 F.Supp.2d 401, 419 (W.D.Pa. 2010) (citing *Phila. Hous. Auth. v. Am. Fed'n of State, County & Mun. Employees*, 956 A.2d 477, 484 (Pa.Commw.Ct. 2008); *Raya & Haig Hair Salon v. Pa. Human Relations Comm'n*, 915 A.2d 728, 732-733 (Pa.Commw.Ct. 2007); *Infinity Broad. Corp. v. Pa. Human Relations Comm'n*, 893 A.2d 151, 157-59 (Pa.Commw.Ct. 2006)). Moreover, "[t]he proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Huston*, 568 F.3d at 104 n. 2 (3d Cir. 2009) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 n. 3 (3d Cir.2001) (citations omitted)); *see also Dreshman v. Henry Clay Villa*, 733 F. Supp. 2d 597, 611 (W.D. Pa. 2010).

environment action under Title VII, a plaintiff must show that: (1) she suffered intentional discrimination because of her race; (2) the discrimination was pervasive and regular; (3) it detrimentally affected her; (4) it would have detrimentally affected a reasonable person of the same protected class in her position; and (5) there is a basis for vicarious liability. *McClendon v. Dougherty*, 2011 WL 677481, at *7 (W.D. Pa. Feb. 15, 2011) (citing *Andreoli v. Gates*, 482 F.3d 641, 643 (3d. Cir. 2007)). In order to be actionable, the harassment must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment." *Id*. at 425-26 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S 57, 67 (1986)). Defendant maintains that Plaintiff has failed to adduce sufficient evidence to establish the first, second or third elements of her hostile work environment claim. The Court will now address each of these arguments.

### 1. Intentional Discrimination Based on Race

Defendant contends that Plaintiff has failed to provide any evidence of intentional discrimination based on race, other than the October 2010 incident, during which Bivins allegedly made racially insensitive remarks. (Docket No. 23 at 14). Plaintiff rebuts that she was: written up for the location of her lesson plan; treated inferiorly in front of a Watson Institute employee; told that, as a white teacher, she had no opportunity for success at a school largely comprised of black students; treated adversely by Bivins; threatened with her job for complaining of racial discrimination; and on a non-existent improvement plan. (Docket No. 28 at 5).

In order to establish the first element, Plaintiff need not "demonstrate direct evidence of her harasser's motivation for discrimination against her" nor "direct proof that her harasser's intent was to create a discriminatory environment." *Abramson v. William Paterson Coll. of New*

*Jersey*, 260 F.3d 265, 278 (3d Cir. 2001). Further, discrimination is often difficult to discern from a factual record and "intent to discriminate can be inferred" from more subtle actions. *Id.* (citations omitted).

As indicated above in the discussion of her race discrimination claim, Plaintiff has produced evidence to raise an inference as to whether or not her placement on two EIPs and receipt of two unsatisfactory ratings were as a result of her job performance or of Defendant's intentional discrimination based on race. Therefore, viewing the record in the light most favorable to her, Plaintiff has, at a minimum, presented sufficient evidence from which a reasonable jury could infer race-based discrimination in accord with the first element.

### 2. Severe and Pervasive Discrimination

Defendants argue that Plaintiff had limited contact with her alleged harasser, Bivins, and she does not identify incidents that could be construed as a pattern of harassment. (Docket No. 23 at 11-13). Plaintiff contends that Bivins openly treated her with hostility. (Docket No. 28 at 5).

In determining whether a work environment is sufficiently hostile, the Court must consider the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

In this Court's estimation, Plaintiff has not presented sufficient evidence from which a jury could find that the alleged harassment occurred with enough frequency to deem it severe and pervasive. Outside of the alleged inferior treatment in front of a Watson Institute employee and the October 2010 incident, during which Bivins allegedly made comments relative to "the

'hood'" in front of Plaintiff's colleagues, Plaintiff was unable to set forth any other specific allegations in support of her contention that she was subjected to a hostile work environment. Plaintiff's argument in opposition to Defendant's motion for summary judgment on this claim does not point to specific evidence in the record or case law, but rather points to a few, discrete events or incidents of potentially hostile or discriminatory conduct. Based on the Court's review of the record, those comments were made at a frequency that was sporadic, at most, and certainly could not be considered regular or pervasive.

After viewing these facts in the light most favorable to Plaintiff, and considering the totality of the circumstances, including the limited number of isolated incidents that allegedly occurred throughout Plaintiff's ten years of employment at PPS, the Court finds that the claimed harassment was not sufficiently severe or pervasive so as to create a hostile working environment. While the content of the statements were sometimes offensive, "[t]he mere utterance of an epithet, joke, or inappropriate taunt that may cause offense," *Weston*, 251 F.3d at 428, or "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious)," *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundower Offshore Services, Inc.*, 523 U.S. 75, 81 (1998)), are not sufficiently severe or pervasive to be actionable. *See King v. City of Phila.*, 66 F.App'x 300, 305 (3d Cir. 2003) (finding that sporadic incidents where employee was subject to a racial epithet, physical pushing, and threats to sabotage his work record were not sufficient to support a finding of hostile work environment); *Sherrod v. Phila. Gas Works*, 57 F.App'x 68, 75-77 (3d Cir. 2003) (alleged incidents, including managers making comments referring to African Americans that ". . . it must be their culture," and  "I'm going to sit at their desks with a whip," were not sufficiently severe and pervasive to establish hostile work environment); *Gharzouzi v.*

15

*Nw. Human Servs. of Pa.*, 225 F. Supp. 2d 514, 536 (E.D. Pa. 2002) (finding six alleged incidents over a three month period insufficient as a basis for his hostile environment claim").

It is the opinion of this Court that a reasonable jury could not find that the harassment alleged was so severe and pervasive that Plaintiff was subject to a hostile working environment. Of course, the Court does not condone the alleged conduct, but Title VII is not a general civility code and only severe and pervasive harassment is actionable. *See Oncale*, 523 U.S. at 81. In sum, considering the totality of the circumstances, and viewing the facts in the light most favorable to her, Plaintiff has not met her burden to present sufficient evidence from which a reasonable jury could infer that the alleged harassing conduct was so severe and pervasive as to constitute a hostile work environment.

### 3. Effect of Harassment on Objectively Reasonable Person

Defendant asserts that, as there is no evidence approaching "severe" or "pervasive" harassment here, a reasonable person would not have been detrimentally affected by the challenged conduct. (Docket No. 23 at 13-14); *see also Dreshman*, 733 F.Supp.2d at 615-16 (employee had not presented sufficient evidence that an objectively reasonable person would be detrimentally affected by the alleged conduct). (Docket No. 33). The Court agrees with this assessment.

As the Supreme Court has recognized, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Oncale*, 523 U.S. at 8 (citing *Harris*, 510 U.S., at 21 (citing *Meritor*, 477 U.S., at 67)). The objectively reasonable requirement is "crucial" and ensures that "ordinary socializing in the workplace," "teasing" and "intersexual flirtation" is not mistaken as discrimination that affects the terms and conditions of

16

one's employment. *Id*. at 81-2. Finally, the "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position." *Id*.

### 4. Conclusion

Viewing the facts in a light most favorable to Plaintiff, and given the Court's finding that the evidence of racial harassment presented is not sufficiently severe or pervasive so as to violate Title VII (or the PHRA), in this Court's estimation, a reasonable jury could not conclude that the alleged harassment would alter the terms and conditions of the employment of a reasonable person. For the foregoing reasons, Defendants' motion for summary judgment as to Plaintiff's hostile work environment claim based on alleged racial harassment is granted.

### C. Retaliation Claim

### 1. McDonnell Douglas *Framework and Exhaustion Argument*

Defendant contends that Plaintiff's retaliation claim should be dismissed for failure to exhaust administrative remedies and that the scope of Plaintiff's retaliation claim should be limited to that which is based on the protected activity of filing with the EEOC (Docket No. 23 at 16-17). Alternatively, Defendant contends that Plaintiff cannot establish a *prima facie* case of retaliation, as she presents insufficient evidence to justify an inference of retaliation, there is insufficient evidence to demonstrate pretext, and there is a missing causal link between the filing of the charge and the completion of the evaluation and ratings process. (*Id.* at 18). In response, Plaintiff argues that the EEOC complaint is sufficient, because she alleged race discrimination and the Defendant received notice of same in April 2011. (Docket No. 28 at 8). Further, Plaintiff avers that she complained to Hoover about Bivins' comments.[6] (*Id.* at 7). Plaintiff argues that Hoover failed to act on her complaint, which should be construed as additional evidence of

---

[6] While this fact is disputed by Defendant, the Court must consider the facts in the light most favorable to Plaintiff.

retaliation. (*Id.*) Plaintiff contends, "I am also not provided the same ability to succeed as a classroom teacher as I am not able to use the same disciplinary tactics that a black teacher uses for fear of being labeled a racist and that Defendants (sic) attitude in this situation was complacent" and that "black co-workers are not treated as I have been." (Docket No. 23 at 16).

Separate provisions of Title VII and the PHRA specifically prohibit employers from retaliating against employees who complain about race-based discrimination. *See* 42 U.S.C. § 2000e-3(a); 43 P.S. § 955(d). The *McDonnell Douglas* burden shifting framework is applied to analyze Plaintiff's retaliation claims under Title VII and the PHRA. *See McDonnell Douglas*, 411 U.S. at 802–03; *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006) (applying framework to a retaliation claim). To establish a *prima facie* case of retaliation under Title VII and the PHRA, Plaintiff must prove that: (1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and, (3) there was a causal connection between the protected activity and the employer's action. *LeBoon v. Lancaster Jewish Comm. Cent. Ass'n*, 503 F.3d 217, 231–32 (3d Cir. 2007) (citing *Moore*, 461 F.3d at 341–42); *see Hubbell*, 688 F.Supp.2d at 435–37 (discussing the relevant Third Circuit and Pennsylvania precedent and holding that PHRA retaliation claims are analyzed akin to Title VII retaliation claims); *see also Dreshman v. Henry Clay Villa*, 733 F. Supp.2d 597, 617-18 (W.D.Pa. 2010).

Further, under Title VII and the PHRA, claimants are required to exhaust their administrative remedies before proceeding in federal district court. *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997). To that end, a Title VII or PHRA plaintiff must first file a discrimination charge with the EEOC, which may issue a "right to sue" letter if it does not resolve the matter within 180 days. 42 U.S.C. § 2000e–5(e)(1), (f)(1); s*ee, e.g.*, *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001); *Woodson v. Scott*

*Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997); *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 921 (Pa. 1989). The scope of a plaintiff's federal claim is determined by the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Tourtellotte v. Eli Lilly & Co.*, 2013 WL 1628603, at *4 (E.D. Pa. Apr. 16, 2013) (quoting *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978)).

Once the Court has found that Plaintiff exhausted her administrative remedies, the Court must inquire "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984) (*per curiam*)). Moreover:

> In determining the scope of the investigation, the court must examine: 1) whether the disputed claim would have been discovered by the EEOC in the course of a reasonable investigation; and 2) whether the claim "which would have been uncovered [was] reasonably within the scope of the charge filed with the EEOC.

*Davis v. Kraft Foods North America*, 2006 WL 237512, at *6 (E.D.Pa. Jan. 31, 2006) (quoting *Hicks*, 572 F.2d at 967). The Third Circuit defines the parameters of a district court action by the scope of the EEOC investigation "which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission." *Robinson v. Dalton*, 107 F.3d 1018, 1025–26 (3d Cir. 1997) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir. 1976)). In *Waiters*, the Plaintiff filed a formal complaint with the EEOC alleging continuing discrimination in retaliation for having made an earlier informal complaint. 729 F.2d at 235.

Unlike the instant Plaintiff's, Waiters' formal complaint charged "retaliation." *Waiters*, 729 F.2d at 237. Moreover, the Court notes that Plaintiff filed her racial discrimination charge

with the assistance of counsel. (Docket Nos. 24, 33 at ¶¶ 3–4); *See Tourtellotte*, 2013 WL

1628603 at *5 n.1 ("The Court's conclusion that Plaintiff has failed to exhaust her administrative

remedies as to her claim for disability discrimination is further supported by the fact that Plaintiff

filed her discrimination charge with the assistance of counsel."). Plaintiff alleges that she was

retaliated against for "voicing complaints." (Docket No. 1 at ¶ 33). As Defendant points out, this

allegation was neither advanced before the EEOC, nor was it within the scope of the EEOC

investigation. (Docket No. 23 at 14–15). Specifically, Plaintiff did not notify the EEOC of her

complaints to Hoover, which constitute the alleged protected activity, in neither the EEOC

charge nor the questionnaire. (Docket No. 23 at 16); (Docket Nos. 30-3, 30-4). Plaintiff did

reference the alleged comments made by Bivins in her EEOC questionnaire, however, as

Defendant notes, it is not privy to that document. *See, e.g.*, *Barzanty v. Verizon PA, Inc*., 361

F.App'x 411, 415 (3d Cir. 2010). The *Barzanty* court further explained:

> *Moreover*, the Intake Questionnaire is not shared with the employer during the
> pendency of the EEOC investigation. On the other hand, an EEOC Charge Form
> serves to define the scope of the Commission's investigation and to notify the
> defendant of the charges against it. *See* 42 U.S.C. § 2000e–5(b) (requiring the
> Commission to serve notice of the charge on the employer against whom it is
> made within ten days, and to conduct an investigation); *Occidental Life Ins. Co.
> of Cal. v. EEOC*, 432 U.S. 355, 359–60, (1977) (stating the same). A plaintiff
> cannot be allowed to transfer the allegations mentioned only in the questionnaire
> to the charge itself. Not only would this be circumventing the role of the
> Commission, but it would be prejudicial to the employer. *See, e.g., Park v.
> Howard Univ.*, 71 F.3d 904, 909 (D.C.Cir. 1995) ("To treat Intake
> Questionnaires willy-nilly as charges would be to dispense with the requirement
> of notification of the prospective defendant . . . " (quoting *Early v. Bankers Life
> and Cas. Co.*, 959 F.2d 75, 80 (7th Cir.1992))); *Binder v. PPL Servs. Corp.*,
> 2009 WL 3738569, at *6 (E.D.Pa. Nov. 5, 2009); *Rajoppe v. GMAC Corp.
> Holding Corp.*, 2007 WL 846671, at *7 (E.D.Pa. Mar. 19, 2007); *Johnson v.
> Chase Home Fin.*, 309 F.Supp.2d 667, 672 (E.D.Pa. 2004).

361 F.App'x at 415.

The charge also does not contain any reference to retaliation for voicing a complaint

about the comments. (Docket No. 23 at 17); (Docket No. 30-3). In sum, other than referring to

her initiation and filing of the EEOC charge, Plaintiff does not mention any protected activity sufficient to put the Defendant on notice of a retaliation claim prior to her termination. (*Id.*). Defendant was not put on notice of the underlying allegation that Bivins made racial comments, the alleged complaint to Hoover about the same, or Plaintiff's complaint to the PTF. In light of same, Plaintiff did not exhaust her administrative remedies relative to her retaliation claim.

Alternatively, relative to the first requirement on the merits, Plaintiff did not allege that she was engaged in any other type of protected activity other than filing her previous claim. (Docket No. 23 at 16). There is no evidence in the record to suggest that Bivins, Hoover, or other administrators were aware of the charge at the time of her second unsatisfactory rating. Defendant admits that the charge was mailed to PPS' administrative offices in May 2011, however neither Bivins nor Hoover received same. (Docket No. 23 at 18). In any event, as Defendant points out, no inference of retaliation can be drawn, even if the administrators knew of the charge, because both EIPs and the first unsatisfactory rating occurred before the filing of the first charge. (*Id.*). The Court can reasonably draw the inference that the decision to give Plaintiff a second EIP had occurred prior to the filing of her charge, as Plaintiff was placed on two EIPs and was given one unsatisfactory rating in two years. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *Windfelder v. May Dep't Stores Co.*, 93 F.App'x 351, 355 (3d Cir. 2004) (citing *Clark*) ("Employers are not obliged to suspend all previously planned or contemplated actions upon receiving a Title VII complaint or learning that a suit has been filed.").

### 2. Conclusion

In consideration of the above analysis, summary judgment must be entered in favor of Defendant on Plaintiff's retaliation claim as the evidence, taken as a whole, does not suggest retaliation against her stemming from her EEOC filing.

**VI. Conclusion**

On Plaintiff's racial discrimination claim, the Court denies Defendant's motion for summary judgment. The Court rules in favor of Defendant and against Plaintiff on the hostile work environment and retaliation claims. Based upon the foregoing, the Defendant's Motion for Summary Judgment (Docket No. 22) is hereby GRANTED, in part, and DENIED, in part. Appropriate Orders follow.

_s/ Nora Barry Fischer_
Nora Barry Fischer
United States District Judge

Date: September 16, 2014

cc/ecf: All counsel of record